AO 106 (Rev 04/10) Application for a Search Warrant (Modified: WAWD 10-26-18)

# UNITED STATES DISTRICT COURT

for the

Western District of Washington

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) | Case No.   MJ21-499 |
| Subject Vehicle, as more fully described in Attachment A | ) ) ) | |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

SEE ATTACHMENT A, ATTACHED HERETO AND INCORPORATED HEREIN BY REFERENCE.

located in the _____ Western _____ District of _____ Washington _____ , there is now concealed *(identify the person or describe the property to be seized)*:

SEE ATTACHMENT B, ATTACHED HERETO AND INCORPORATED HEREIN BY REFERENCE.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| 21 U.S.C. § 841(a)(1) | Distribution of Controlled Substances and Possession with Intent to Distribute Controlled Substances |
| 21 U.S.C. § 846 | Conspiracy to Distribute Controlled Substances |

The application is based on these facts:

✓ See Affidavit of FBI TFO Paul Zoller.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Pursuant to Fed. R. Crim. P. 4.1, this warrant is presented: ☑ by reliable electronic means; or: ☐ telephonically recorded.

*Applicant's signature*

Paul Zoller, FBI Task Force Officer
*Printed name and title*

○ The foregoing affidavit was sworn to before me and signed in my presence, or
◉ The above-named agent provided a sworn statement attesting to the truth of the foregoing affidavit by telephone.

Date:   09/08/2021

*Judge's signature*

City and state:   Seattle, Washington         S. Kate Vaughan, U.S. Magistrate Judge
*Printed name and title*

USAO: 2021R00997

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## ATTACHMENT A

**Property to Be Searched**

A gray 2004 BMW 530 4DR with a Vehicle Identification Number of WBANA73594B800158.

ATTACHMENT A - 1

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1

2

## ATTACHMENT B
## ITEMS TO BE SEIZED

3

4

5

6

7

All documents, records, images, and items, in whatever form, that are evidence, contraband, fruits, and instrumentalities of the commission of the following crimes: 21 U.S.C. § 841(a)(1) (distribution of controlled substances / possession with intent to distribute controlled substances); 21 U.S.C. § 846 (conspiracy to distribute controlled substances) involving Robert K. ARTZ, since May 2020, including:

8

      1.      Controlled Substances and controlled substance analogues.

9

10

11

12

      2.      Drug Paraphernalia and Instruments of Drug Trafficking: Items used, or to be used, to store, process, package, use, and/or distribute controlled substances; plastic bags, cutting agents, scales, measuring equipment, tape, hockey or duffel bags, chemicals or items used to test the purity and/or quality of controlled substances.

13

14

      3.      Drug Transaction Records:  Documents such as ledgers, receipts, and notes relating to the acquisition, transportation, and distribution of controlled substances, however stored, including in cellular phones.

15

16

17

18

      4.      Customer and Supplier Information:  Items identifying drug customers and drug suppliers, such as telephone records, personal address books, correspondence, diaries, calendars, notes with phone numbers and names, "pay/owe sheets" with drug amounts and prices, and maps or directions.

19

20

21

      5.      Cash and Financial Records:  Currency and financial records, such as bank records, safe deposit box records and keys, credit card records, bills, receipts, tax returns, and vehicle documents; records that show income and expenditures, net worth, money transfers, wire transmittals, negotiable instruments, bank drafts, and cashier's checks.

22

23

24

25

      6.      Photographs/Video:  Photographs, video tapes, digital cameras, surveillance cameras, and associated hardware/storage devices depicting property occupants, friends and relatives of the property occupants, or suspected buyers or sellers of controlled substances, controlled substances or other contraband, weapons, and assets derived from the distribution of controlled substances.

26

      7.      Weapons, including firearms, magazines, ammunition, and body armor.

27

28

ATTACHMENT B - 1

8.      Codes:  Evidence of codes used in the distribution of controlled substances, such as passwords, code books, cypher or decryption keys.

9.      Property Records:  Evidence relating to the purchase, ownership, registration, or control of the BMW.

10.     Indicia of use of the BMW, such as correspondence, papers, records, photographs, or identification.

11.     Individual and business financial books, records, receipts, notes, ledgers, diaries, journals, and all records relating to income, profit, expenditures, or losses, such as:

a.      Employment records:  paychecks or stubs, lists and accounts of employee payrolls, records of employment tax withholdings and contributions, dividends, stock certificates, and compensation to officers.

b.      Savings accounts:  statements, ledger cards, deposit tickets, register records, wire transfer records, correspondence, and withdrawal slips.

c.      Checking accounts:  statements, canceled checks, deposit tickets, credit/debit documents, wire transfer documents, correspondence, and register records.

d.      Loan Accounts:  financial statements and loan applications for all loans applied for, notes, loan repayment records, and mortgage loan records.

e.      Collection account statements and other-related records.

f.      Certificates of deposit:  applications, purchase documents, and statements of accounts.

g.      Credit card accounts:  credit cards, monthly statements, and receipts of use.

h.      Receipts and records related to gambling wins and losses, or any other contest winnings.

j.      Financial records:  profit and loss statements, financial statements, receipts, balance sheets, accounting work papers, any receipts showing purchases made, both business and personal, receipts showing charitable contributions, and income and expense ledgers.

12.     All bearer bonds, letters of credit, money drafts, money orders, cashier's checks, travelers checks, Treasury checks, bank checks, passbooks, bank drafts, money wrappers, stored value cards, and other forms of financial remuneration evidencing the obtaining, secreting, transfer, and/or concealment of assets and/or expenditures of money.

13.     All Western Union and/or Money Gram documents and other financial documents evidencing domestic or international wire transfers, money orders, official checks, cashier's checks, or other negotiable interests that can be purchased with cash, including applications, payment records, money orders, and frequent customer cards.

ATTACHMENT B - 2

14. Correspondence, papers, records, and any other items showing employment or lack of employment.

15. Phone books, address books, any papers or documents reflecting names, addresses, telephone numbers, pager numbers, cellular telephone numbers, facsimile, and/or telex numbers, telephone records and bills relating to co-conspirators, sources of supply, customers, financial institutions, and other individuals or businesses with whom a financial relationship exists; telephone answering devices that record telephone conversations and the tapes therein for messages left for or by co-conspirators for the delivery or purchase of controlled substances or laundering of drug proceeds.

16. Safes and locked storage containers, and the contents thereof which are otherwise described in this document.

17. Tools that may be used to open hidden compartments in vehicles, such as paint, bonding agents, magnets, or other items that may be used to open/close said compartments.

18. Pill press machine, encapsulating machine, and other tools or equipment used to manufacture pills.

19. Cellular phones, including:

a. Any passwords, password files, test keys, encryption codes or other information necessary to access the cellular phone;

b. Evidence of who used, owned, or controlled the cellular phone at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence; and

c. Evidence of the times the cellular phone was used.

ATTACHMENT B - 3

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

# AFFIDAVIT

STATE OF WASHINGTON      )
                                              )      ss
COUNTY OF SNOHOMISH      )

I, P. Zoller, a Task Force Officer with Federal Bureau of Investigation, Northwestern Washington Safe Trails Task Force, having been duly sworn, state as follows:

## AFFIANT BACKGROUND

1.      I, P. Zoller, am a fully Commissioned Police Officer with the Tulalip Police Department assigned within the exterior boundaries of the Tulalip Reservation located in Tulalip, Washington.  I have been a commissioned officer since July of 2015 and I have graduated from the Federal Law Enforcement Training Center Police Academy and the Washington State Criminal Justice Training Center Police Equivalency Academy.  My duties and training include traffic enforcement, crimes against persons, drug identification and recognition, pill identification, drug recognition, drug interdiction, and DUI detection.  I am currently assigned to the Detective Division as a Tulalip Drug Task Force Detective.  I am also assigned to the Northwestern Washington Safe Trails Task Force.  I hold a deputation from the Federal Bureau of Investigation ("FBI") and United States Marshal Service that authorizes me to investigate violations of Title 18 and Title 21 of the United States Code.

2.      I have participated in, and successfully completed, multiple training courses, including: Advanced Criminal Training/Workshop, Managing Narcotic Informants, Washington State Narcotics Investigator Association Training, and the Drug Enforcement Administration ("DEA") 80-hour Basic Drug Investigation Course.  The DEA course training on search and seizure reviews, electronic surveillance and search warrants, drug identification, pharmacology identification, developing and utilizing confidential sources, undercover operations and risk management, undercover practical exams, Jetway and drug interdiction case studies, raid plan development, de-confliction,

AFFIDAVIT OF TFO P. ZOLLER - 1

asset forfeiture, vehicle-involved arrests, undercover practical exercises, trends and methods of trafficking and intelligence, and technical operations.

3.      In my role as a Drug Task Force Detective for the Tulalip Police Department, I have participated in narcotics investigations involving heroin, fentanyl, cocaine, marijuana, and methamphetamine.  These investigations have resulted in the arrest of individuals, the seizure of narcotics and/or narcotic-related evidence, and the forfeiture of narcotics related assets.  I have been involved in the service of search warrants as part of these investigations.  As a result of my training and experience, I am familiar with the various tools, methods, trends, paraphernalia and related articles used by various traffickers in their efforts to conceal and distribute controlled substances. I am also familiar with the manner in which drug traffickers use telephones, often cellular telephones, to conduct their unlawful operations.

## INTRODUCTION AND PURPOSE OF AFFIDAVIT

4.      I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a warrant to search a gray 2004 BMW 530 4DR with a Vehicle Identification Number ("VIN") of WBANA73594B800158.

5.      Because this Affidavit is submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, it does not set forth each and every fact that I or others have learned during the course of this investigation.  I have set forth only the facts that I believe are necessary to establish probable cause to believe that evidence, fruits and instrumentalities of violations of Distribution of Controlled Substances and Possession with Intent to Distribute Controlled Substances, in violation of 21 U.S.C. § 841(a)(1), and Conspiracy to Distribute Controlled Substances, in violation of 21 U.S.C. § 846, will be found in the BMW.

6.      On the morning of September 2, 2021, the Tulalip Police Department ("TPD") executed a search warrant at a residence on the Tulalip Reservation.  A copy of

AFFIDAVIT OF TFO P. ZOLLER - 2

1  that search warrant, and the affidavit in support thereof, is attached hereto as Exhibit 1

2  and fully incorporated herein.

3     7. Following the execution of the search warrant, TPD interviewed a number

4  of individuals found at the SPENCER HOUSE.  Based on those interviews, TPD learned

5  that a gray 2004 BMW 530 4DR ("the BMW") parked near, but not on, the SPENCER

6  house property, was recently purchased by ARTZ.  This was consistent with recent

7  observations by TPD detectives who had noticed the BMW parked near the SPENCER

8  HOUSE recently.

9     8. As a result of the BMW being identified as likely belonging to ARTZ, other

10  TPD officers and I suspected it may contain narcotics or other evidence of drug

11  trafficking.  Based on my training and experience, I know that drug traffickers often store

12  controlled substances, records of drug trafficking, and similar items of evidentiary value

13  in locations where they believe their property is secure and will remain undetected from

14  law enforcement, such as inside their vehicles.

15     9. One of the TPD personnel on scene was TPD Commander James Williams.

16  Commander Williams requested the assistance of Marysville Police Department Officer

17  B. Smith and his K9 partner Steele to deploy K9 Steele on the BMW.  They did so, and

18  K9 Steele alerted to the presence of narcotics.  Officer Smith's canine handler resume is

19  attached hereto as Exhibit 2 and fully incorporated herein.[1]

20     10. Commander Williams found the VIN of the BMW, which was visible from

21  the exterior of the car.  The VIN is WBANA73594B800158.

22     11. I spoke with FBI SA Abel Peterson, who told me that the FBI was able to

23  identify the registered owner of the BWM was D.L.  TPD Detective Sergeant Schakel

24  spoke with D.L. by phone, and D.L. confirmed that she had sold the BMW to ARTZ

25

26

27  [1] Officer Smith titled his "Canine and Handler Resume" as Attachment A, however, to avoid unnecessary confusion with multiple documents titled "Attachment A," the resume is attached as "Exhibit 2." No other changes to the text of the document were made.

28   AFFIDAVIT OF TFO P. ZOLLER - 3

1  approximately a week ago.  ARTZ gave D.L. $500 as a down payment and agreed to pay
2  a total of $3,000 for the BMW.

3      12.    While TPD was securing the BMW with the assistance of a tow truck in
4  preparation for the instant application for a search warrant, the tow truck driver asked that
5  the door be opened so that he could secure the steering wheel, which I know to be a
6  common safety practice of tow truck drivers.  While the door to the vehicle was open,
7  TPD Officer Michael Carrington saw what appeared to be a handgun in the driver's side
8  door console.

9                          **CONCLUSION**

10     13.    Based on the foregoing, I believe there is probable cause that evidence,
11 fruits, and instrumentalities of the crimes of Distribution of Controlled Substances and
12 Possession with Intent to Distribute Controlled Substances, in violation of 21 U.S.C.
13 § 841(a)(1), and Conspiracy to Distribute Controlled Substances, in violation of 21
14 U.S.C. § 846, are located in the BMW, as more fully described in Attachment A to this
15 Affidavit.  I therefore request that the court issue a warrant authorizing a search of the
16 BMW for the items more fully described in Attachment B hereto, incorporated herein by
17 reference, and the seizure of any such items found therein.

18
19
20                          P. Zoller, Affiant
                            Task Force Officer, FBI
21
22
23     The above named agent provided a sworn statement attesting to the truth of the affidavit by
24 telephone this 8th day of September, 2021.
25
26                          THE HON. S. KATE VAUGHAN
27                          United States Magistrate Judge
28

AFFIDAVIT OF TFO P. ZOLLER - 4

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

# Exhibit 1



AO 106 (Rev 04/10) Application for a Search Warrant (Modified WAWD 10-26-18)

# UNITED STATES DISTRICT COURT
### for the
### Western District of Washington

| | |
|---|---|
| In the Matter of the Search of<br><br>*(Briefly describe the property to be searched*<br>*or identify the person by name and address)*<br>Subject Residence, as more fully described in<br>Attachment A | )<br>)<br>)<br>)<br>)<br>) |

Case No.    MJ21-489

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

SEE ATTACHMENT A, ATTACHED HERETO AND INCORPORATED HEREIN BY REFERENCE.

located in the        Western        District of        Washington        , there is now concealed *(identify the person or describe the property to be seized)*:

SEE ATTACHMENT B, ATTACHED HERETO AND INCORPORATED HEREIN BY REFERENCE.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a)(1) | Distribution of Controlled Substances and Possession with Intent to Distribute Controlled Substances |
| 21 U.S.C. § 846 | Conspiracy to Distribute Controlled Substances |

The application is based on these facts:

✓  See Affidavit of FBI TFO Paul Zoller.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Pursuant to Fed. R. Crim. P. 4.1, this warrant is presented: ☑ by reliable electronic means; or: ☐ telephonically recorded.

_____
*Applicant's signature*    ES #47756

Paul Zoller, FBI Task Force Officer
*Printed name and title*

○ The foregoing affidavit was sworn to before me and signed in my presence, or
⊙ The above-named agent provided a sworn statement attesting to the truth of the foregoing affidavit by telephone.

Date:    09/01/2021        _____
*Judge's signature*

City and state:  Seattle, Washington        S. Kate Vaughan, U.S. Magistrate Judge
*Printed name and title*

USAO: 2021R00997

**AFFIDAVIT**

STATE OF WASHINGTON    )
                             )    ss
COUNTY OF SNOHOMISH   )

I, P. Zoller, a Task Force Officer with Federal Bureau of Investigation, Northwestern
Washington Safe Trails Task Force, having been duly sworn, state as follows:

## AFFIANT BACKGROUND

1.    I, P. Zoller, am a fully Commissioned Police Officer with the Tulalip Police
Department assigned within the exterior boundaries of the Tulalip Reservation located in
Tulalip, Washington. I have been a commissioned officer since July of 2015 and I have
graduated from the Federal Law Enforcement Training Center Police Academy and the
Washington State Criminal Justice Training Center Police Equivalency Academy. My
duties and training include traffic enforcement, crimes against persons, drug
identification and recognition, pill identification, drug recognition, drug interdiction, and
DUI detection. I am currently assigned to the Detective Division as a Tulalip Drug Task
Force Detective. I am also assigned to the Northwestern Washington Safe Trails Task
Force. I hold a deputation from the Federal Bureau of Investigation ("FBI") and United
States Marshal Service that authorizes me to investigate violations of Title 18 and Title
21 of the United States Code.

2.    I have participated in, and successfully completed, multiple training
courses, including: Advanced Criminal Training/Workshop, Managing Narcotic
Informants, Washington State Narcotics Investigator Association Training, and the Drug
Enforcement Administration ("DEA") 80-hour Basic Drug Investigation Course. The
DEA course training on search and seizure reviews, electronic surveillance and search
warrants, drug identification, pharmacology identification, developing and utilizing
confidential sources, undercover operations and risk management, undercover practical
exams, Jetway and drug interdiction case studies, raid plan development, de-confliction,

AFFIDAVIT OF TFO P. ZOLLER - 1

1 | asset forfeiture, vehicle-involved arrests, undercover practical exercises, trends and
2 | methods of trafficking and intelligence, and technical operations.

3 |         3.      In my role as a Drug Task Force Detective for the Tulalip Police
4 | Department, I have participated in narcotics investigations involving heroin, fentanyl,
5 | cocaine, marijuana, and methamphetamine.  These investigations have resulted in the
6 | arrest of individuals, the seizure of narcotics and/or narcotic-related evidence, and the
7 | forfeiture of narcotics related assets.  I have been involved in the service of search
8 | warrants as part of these investigations.  As a result of my training and experience, I am
9 | familiar with the various tools, methods, trends, paraphernalia and related articles used by
10 | various traffickers in their efforts to conceal and distribute controlled substances. I am
11 | also familiar with the manner in which drug traffickers use telephones, often cellular
12 | telephones, to conduct their unlawful operations.

13 |                    **INTRODUCTION AND PURPOSE OF AFFIDAVIT**

14 |         4.      I make this affidavit in support of an application under Rule 41 of the
15 | Federal Rules of Criminal Procedure for a warrant to search the premises located at 8021
16 | 30th Drive Northeast in Tulalip, Washington ("the SPENCER HOUSE") as more fully
17 | described in Attachment A to this Affidavit, for the property and items described in
18 | Attachment B to this Affidavit, as well as any cellular phone located therein.  The
19 | SPENCER HOUSE is known to be the residence of Robert K. ARTZ, Shaneenia M.
20 | SPENCER, Lauw-ya S.S.A. SPENCER, and others known and unknown.  Authority to
21 | search extends to all parts of the property, including main structure, garage(s), storage
22 | structures, outbuildings, and curtilage, and all vehicles, containers, compartments, or
23 | safes located on the property, whether locked or not, where the items described in
24 | Attachment B could be found.

25 |         5.      Because this Affidavit is submitted for the limited purpose of establishing
26 | probable cause in support of the application for a search warrant, it does not set forth
27 | each and every fact that I or others have learned during the course of this investigation.  I

28 | AFFIDAVIT OF TFO P. ZOLLER - 2

1 │ have set forth only the facts that I believe are necessary to establish probable cause to
2 │ believe that evidence, fruits and instrumentalities of violations of Distribution of
3 │ Controlled Substances and Possession with Intent to Distribute Controlled Substances, in
4 │ violation of 21 U.S.C. § 841(a)(1), and Conspiracy to Distribute Controlled Substances,
5 │ in violation of 21 U.S.C. § 846, will be found at the SPENCER HOUSE.

6 │ **SOURCES OF INFORMATION**

7 │     6.    I make this Affidavit based upon personal knowledge derived from my
8 │ participation in this investigation and upon information I believe to be reliable from the
9 │ following sources:

10 │     a.    My training and experience investigating drug trafficking and related
11 │ criminal activity, as described herein;

12 │     b.    Oral and written reports and documents about this and other
13 │ investigations that I have received from agents of the Tulalip Police Department, the
14 │ Snohomish County Sherriff's Office, and other federal, state and local law enforcement
15 │ agencies;

16 │     c.    Physical surveillance conducted by the aforementioned agencies,
17 │ and other law enforcement agencies, that has been reported to me directly or indirectly;

18 │     d.    Washington State Department of Licensing records;

19 │     e.    Tulalip Tribal Registry records;

20 │     f.    Commercial databases;

21 │     g.    Public records; and

22 │     h.    Publicly viewable information on social media websites (*i.e.*,
23 │ Facebook, Instagram).

24 │ **SUMMARY OF PROBABLE CAUSE**

25 │     7.    Since June 2020 and continuing to August 2021, the Tulalip Police
26 │ Department ("TPD") has conducted four controlled buys and received multiple tips from
27 │
28 │ AFFIDAVIT OF TFO P. ZOLLER - 3

1    Tulalip community members regarding the SPENCER HOUSE, which is known as one
2    of the primary locations to purchase drugs on the Tulalip Reservation.

3                                    **PROBABLE CAUSE**

4                          *Background on Counterfeit Fentanyl Pills*

5        8.        Based on my training and experience, I know that "Perc 30s," "M30s,"
6    "fedi pills," and "blues" all are terms used to describe pills designed to resemble
7    legitimate 30mg oxycodone hydrochloride pills.  They are typically circular blue pills
8    imprinted with "M30."  These pills are commonly created with a pill press and pressed
9    with acetaminophen and a small amount of fentanyl.  Fentanyl is a potent opiate, much
10   more potent than heroin.  Fentanyl is cheap to buy in bulk and can be ordered online and
11   shipped to one's residence.  It often causes overdoses and overdose deaths due to its
12   potency.

13       9.        TPD Detectives know from routine law enforcement investigations and
14   contacts that S. SPENCER is a Tulalip Tribal member involved in drug distribution on
15   the Tulalip Reservation.  ARTZ is also known by TPD Detectives, based on routine law
16   enforcement investigations and contacts, to be involved in drug distribution on the
17   Tulalip Reservation.  I know that ARTZ and S. SPENCER are in a long-term dating
18   relationship and that ARTZ has lived at the SPENCER HOUSE on the Tulalip
19   Reservation for over a year.

20       10.       In or around May 2020, while conducting law enforcement surveillance on
21   an unrelated house near to the SPENCER HOUSE, I saw significant foot traffic and
22   activity at the SPENCER HOUSE and began to suspect that it may be the location of
23   drug distribution.

24              *ARTZ Hides with a Fanny Pack of Drugs and Cash in June 2020*

25       11.       On June 30, 2020, I saw ARTZ and S. SPENCER walking towards a
26   Lincoln Town Car in the parking lot of a hardware store on the Tulalip Reservation.  I
27   attempted to contact them and ARTZ immediately ran and hid behind manure bales

28   AFFIDAVIT OF TFO P. ZOLLER - 4

1  located on the north end of the business. While he was running, I could see some type of
2  bag secured around ARTZ's waist which was bobbing up and down as he ran. I followed
3  ARTZ to the manure bales and when I found him he was taken into custody. With the
4  assistance of a narcotics canine we found, hidden in one of the bales, a Nike fanny pack
5  with 28 M30 pills, 12.82 grams of heroin, 3.63 grams methamphetamine, .71 grams of
6  marijuana, and $1,680 cash.

7       12.    The drugs found in the Nike fanny pack were submitted to the Washington
8  State Patrol Crime Laboratory, which concluded the following:

9            a.  One of the M30 pills was tested and found to contain fentanyl.

10           b.  The suspected heroin was tested and found to contain heroin.

11           c.  The suspected methamphetamine was found to contain methamphetamine.

12       *August 2020 Purchase of Four Fentanyl Pills at the SPENCER HOUSE*

13       13.    On or around August 12, 2020, a confidential source ("CS-1")[1] told TPD
14  Detective James Cabras that CS-1 could purchase "Perc 30s" from an individual named
15  Suzette A. Cheer ("CHEER") who lived at the SPENCER HOUSE with her boyfriend,
16  Jonathan R. Mackenzie ("MACKENZIE").

17           a.  CS-1 told Detective Cabras that CS-1 had purchased drugs from
18  CHEER and MACKENZIE in the past and that CS-1 believed the "Perc 30s" to be
19  counterfeit fentanyl pills.

20           b.  CS-1 told Detective Cabras that CS-1 had a contact phone number
21  for CHEER and MACKENZIE – a number that CHEER and MACKENZIE shared. CS-
22  1 showed Detective Cabras CS-1's phone and he observed text messages in which CS-1
23  ordered a specific amount of pills for a specific amount of cash. Based on Detective

24

25

26  [1] CS-1 approached TPD and offered to provide information about drug trafficking on the Tulalip Reservation in
27  exchange for money. CS-1 has two convictions for possession of a stolen firearm, a conviction for trafficking in
    stolen property, a conviction for solicitation of a controlled substance, and a conviction for third degree theft. CS-1
28  has previously provided credible information that has been corroborated by law enforcement.

AFFIDAVIT OF TFO P. ZOLLER - 5

1  Cabras review of these messages he saw that CHEER/MACKENZIE sold "Perc 30's" for
2  $20 a pill.

3         c.     On that same day TPD Detective Garrett Churchill and Detective
4  Cabras searched CS-1 and CS-1's car and found no narcotics, money, or contraband.
5  Detective Cabras gave CS-1 $100 of cash and instructed CS-1 to purchase four pills.

6         d.     Detective Garrett Churchill and Detective Cabras rode with CS-1 to
7  the SPENCER HOUSE.  CS-1 pulled up in front of the house and Detective Cabras
8  watched CS-1 walk towards the front door.  CS-1 contacted someone at the door, had a
9  brief conversation, and engaged in some type of exchange.  CS-1 then returned to the
10  vehicle and provided Detective Cabras four round, blue pills imprinted "M 30."
11  Detective Cabras recognized these pills to resemble oxycodone pills.

12         e.     Following the buy, Detective Cabras searched CS-1 and CS-1's
13  vehicle and confirmed that there were no narcotics, money, or contraband.  Detective
14  Cabras and Detective Churchill debriefed CS-1 and learned that, when CS-1 arrived at
15  the SPENCER HOUSE, CS-1 met CHEER at the front door of the house and CHEER
16  provided CS-1 with the pills in exchange for cash.

17         f.     When Detective Cabras returned to TPD he tested one of the pills
18  using the TruNarc Handheld Narcotics Analyzer, a device used to field test for
19  presumptive narcotics, precursors, and cutting agents.  TruNarc tests almost 500
20  substances.  The scan indicated the presence of acetaminophen (paracetamol) – cannot
21  rule out the presence of narcotic.  This result is consistent with the pills being counterfeit
22  fentanyl pills, which are commonly cut with acetaminophen.

23         g.     I am providing the pills to the FBI for laboratory testing.
24  ///
25  ///
26  ///
27
28  AFFIDAVIT OF TFO P. ZOLLER - 6

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  *November 2020 Purchase of Five Fentanyl Pills from the SPENCER HOUSE*

2      14.   In or around November 2020 I spoke with another confidential source

3  ("CS-2")[2] regarding drug sales on the Tulalip Reservation. CS-2 told me that CS-2 has

4  purchased drugs from several houses on the reservation. CS-2 also told me that an

5  individual named "Laura Loera" was known to sell drugs including methamphetamine,

6  heroin, and "M30s" or "blues." Using law enforcement databases, social media, and

7  Tulalip Tribal registry, I was able to identify "Laura Loera" as Laura J. Del-Villar

8  Hernandez ("HERNANDEZ"). CS-2 told me that HERNANDEZ drives a black Chrysler

9  300.

10          a.    I searched CS-2 and CS-2's car and found no narcotics, money, or

11  contraband. I gave CS-2 $100 of cash and instructed CS-2 to purchase five pills. I then

12  followed CS-2 to the 81st Street Housing District on the Tulalip Reservation, where the

13  SPENCER HOUSE is located. I saw CS-2 park in the driveway of the SPENCER

14  HOUSE next to a black 2006 Chrysler 300C with a Washington State license plate

15  ending in -190. I ran this license plate number through law enforcement databases and

16  learned that it was registered to HERNANDEZ's son.

17          b.    I watched CS-2 enter the SPENCER HOUSE and return to CS-2's

18  car shortly thereafter. I followed CS-2 to a predetermined location and CS-2 gave me

19  five circular blue pills imprinted with "M30." I searched CS-2 and CS-2's vehicle and

20  found no narcotics, cash, or contraband.

21          c.    I debriefed CS-2 and CS-2 told me that CS-2 had purchased the pills

22  from HERNANDEZ. CS-2 told me that the black Chrysler parked in the driveway of the

23  SPENCER HOUSE belonged to HERNANDEZ.

24

25

26  _____

27  [2] CS-2 had offered to work for TPD as an informant in exchange for money. CS-2 has no criminal history. CS-2
has previously provided credible information that has been corroborated by law enforcement and has completed two
28  controlled buys for the Tulalip Drug Task Force.
AFFIDAVIT OF TFO P. ZOLLER - 7

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1            d.     I field tested one of the pills using the TruNarc Handheld Narcotics

2 Analyzer and the scan indicated the presence of acetaminophen (paracetamol) – cannot

3 rule out the presence of narcotic. This result is consistent with the pills being counterfeit

4 fentanyl pills, which are commonly cut with acetaminophen.

5            e.     I am providing the pills to the FBI for laboratory testing.

6          *ARTZ Flees from a Car found to Contain Drugs and a Scale in May 2021*

7         15.    On or around May 11, 2021, I saw a 2006 Hyundai Sonata with inoperable

8 brake lights entering the 81st Street Housing District and initiated my overhead red and

9 blue lights. The driver, later identified as Joseph L. MYERS, accelerated towards 30th

10 Drive Northeast and parked in the driveway of the SPENCER HOUSE. The front

11 passenger quickly exited from the car and ran towards the back of the SPENCER

12 HOUSE. I recognized the passenger as resembling ARTZ, but could not see him clearly

13 enough to be certain. Backup units arrived to search for ARTZ but he was not found.

14         16.    A narcotics canine was deployed around the Sonata and alerted to the odor

15 of narcotics. I obtained a search warrant from Tulalip Tribal Court for the Sonata.

16 During the search of the Sonata I found 307 oxycodone hydrochloride pills, 10.82 grams

17 of heroin, and 26.01 grams of methamphetamine. I also found a digital scale with the

18 name "BADBOB" scratched on the back. The drugs and scale were found in a Gucci bag

19 that also contained a photograph of ARTZ's daughter. As explained in paragraph 24

20 below, "badbob" is consistent with one of ARTZ's email addresses.

21         17.    MYERS was arrested for eluding police, driving while license suspended,

22 obstructing a law enforcement officer, and for possession of drug paraphernalia. I

23 verbally advised MYERS of his Miranda Rights and he provided a statement admitting

24 that the passenger who fled from his car was ARTZ.

25         18.    As explained in paragraphs 24-25 below, ARTZ sent text messages on May

26 12 in which he discussed having to flee when Tribal law enforcement attempted to pull

27

28   AFFIDAVIT OF TFO P. ZOLLER - 8

1 over a car he was in, stating that law enforcement recovered "my Gucci backpack and all
2 my work."

3                          *June 2021 Purchase of Counterfeit Fentanyl Pills*

4          19.      On or around June 30, 2021, TPD K9 Officer Jake Wilcox encountered an
5 individual known to have an outstanding Tulalip Tribal warrant for theft and burglary.
6 The individual ("CS-3") was taken into custody and told Officer Wilcox that CS-3 would
7 be willing to work for TPD as a confidential informant in exchange for potential
8 consideration on his outstanding charges.[3]

9          a.      Detective James Cabras and I met with CS-3 at TPD and CS-3 told
10 us that CS-3 was willing to buy drugs from "Bobby," who I knew to be ARTZ.  CS-3 told
11 us that CS-3 had bought drugs from ARTZ over a hundred times throughout the years
12 and that ARTZ had been CS-3's "main plug" for a long time.  Based on my training and
13 experience, I know the term "plug" is used to refer to a drug dealer.  CS-3 told us that
14 ARTZ lived with his girlfriend "Neenia," who I knew to be S. SPENCER, at the
15 SPENCER HOUSE.  I showed CS-3 a photograph of the SPENCER HOUSE and CS-3
16 was able to correctly identify the house.

17          b.      I searched CS-3 and CS-3's car and found no narcotics, money, or
18 contraband.  I gave CS-3 cash and instructed CS-3 to purchase pills.  I then secured
19 vehicle to use for the buy and searched it for narcotics, money, and contraband and found
20 none.  I gave CS-3 $40.00 of cash and instructed CS-3 to purchase three pills.

21          c.      I then drove CS-3 to the 81st Street Housing District.  I dropped CS-
22 3 off near the intersection of Donald Campbell Road and 81st Street, and Detective
23 Cabras and I watched CS-3 enter the SPENCER HOUSE through the front door.  CS-3
24 exited the house moments later and we made contact with him.  From exiting the
25 SPENCER HOUSE and making contact with me CS-3 did not make contact with any
26
27 _____
28 [3] CS-3 has a conviction for third degree theft.
   AFFIDAVIT OF TFO P. ZOLLER - 9

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1 | other individuals. CS-3 gave me three round blue pills imprinted with "M30." I searched
2 | CS-3 and found no narcotics, cash, or contraband.

3 |        d.     I debriefed CS-3, who told me that when CS-3 entered the
4 | SPENCER HOUSE he found multiple individuals who he did not know. He asked for
5 | ARTZ, but was advised by the unknown individuals that ARTZ was not home. Shortly
6 | thereafter, S. SPENCER arrived home and told CS-3 that ARTZ had been arrested earlier
7 | that day. I later confirmed that ARTZ was arrested by the Everett Police Department on
8 | June 30, 2021, for Possession with Intent and for an outstanding felony warrant out of the
9 | Department of Corrections. S. SPENCER and CS-3 then went into S. SPENCER's
10 | bedroom where CS-3 gave SPENCER $40.00 and S. SPENCER gave CS-3 three
11 | oxycodone hydrochloride pills.

12 |        e.     I am providing the pills to the FBI for laboratory testing.

13 | *Multiple Cooperating Witnesses Identify ARTZ as a Drug Trafficker in August 2021*

14 |     20.    On or around August 11, 2021, I contacted a male during a traffic stop on
15 | the 3400 block of 105th Street Northeast on the Tulalip Reservation and clearly saw
16 | methamphetamine and drug paraphernalia in the car. The driver ("Witness-1") gave me
17 | consent to search the car and we recovered the drugs and paraphernalia. I asked Witness-
18 | 1 if Witness-1 had purchased the drugs. Witness-1 said no and explained that her/his
19 | acquaintance purchased pills from a female named "Neenia" who had a boyfriend under
20 | the supervision of the Washington State Department of Corrections ("DOC"). I know
21 | that ARTZ was under the supervision of the DOC at this time. Witness-1 explained that
22 | "Neenia" lived "Down the Quil. I think its 13th. That little housing projects, there. Right
23 | down there. Go all the way to the back. On the left, that house with all that shit out there,
24 | cars. Right there, she sells hella pills." Based on this description, I believe that Witenss-1
25 | was describing S. SPENCER and the SPENCER HOUSE. Witness-1 then provided me
26 | with "Neenia's" cell phone number, which I know to be S. SPENCER's cell phone
27 | number.

28 |

AFFIDAVIT OF TFO P. ZOLLER - 10

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

21.     On or around August 12, 2021, TPD patrol units Officer Wilcox informed me that they had arrested two individuals for theft, both of whom are known drug users. Detective Cabras and I had seen the individuals earlier in the week in the proximity of the SPENCER HOUSE. Following their arrest, patrol said that one of the individuals ("Witness-2")[4] was willing to speak with us.

22.     I advised Witness-2 of her/his *Miranda* rights and Witness-2 said that s/he understood those rights. I asked Witness-2 about drug dealers on the Tulalip Reservation and Witness-2 said that s/he was willing to "give up one guy" who Witness-2 knew to be non-tribal drug dealer selling "a couple hundred" pills. Witness-2 described this individual as a tall, skinny white male who lived on 81st Street and was named "Bobby" who lived with his girlfriend "Neena." Witness-2 admitted to having purchased drugs from Bobby earlier that day. Witness-2 buys "Perc 30s" from Bobby for $10 a pill and had purchased pills from Bobby every day for the past two weeks. Witness-2 described Bobby's room as being down a hallway, last bedroom on the right. I showed Witness-2 a photograph of ARTZ and Witness-2 identified ARTZ as "Bobby." Witness-2 agreed to show us ARTZ's house, and Detective Cabras and I used an unmarked patrol vehicle to take Witness-2 to the 81st Street Housing District where Witness-2 identified the SPENCER HOUSE as the house where Witness-2 buys drugs. We then released Witness-2 from custody.

*ARTZ Sells M30 Pills on August 13, 2021*

23.     On or around August 13, 2021, I spoke with a cooperating source ("CS-4").[5] CS-4 told me that CS-4 had purchased drugs from several different houses and

---

[4] Witness-2 was willing to speak with us in exchange for not being held on any charges. Witness-2 has no criminal convictions. Witness-2 does have Tulalip Tribal arrest history for Theft, Possession of a Controlled Substance, Possession of Drug Paraphernalia, and Criminal Endangerment.

[5] CS-4 had agreed to work for TPD as an informant in exchange for mitigation related to a warrant out of Marysville. CS-4 has felony convictions for assault in the second degree, theft in the second degree, possession of a controlled substance, false/misleading statements to a public servant, theft in the third degree, driving under the influence, attempted theft, theft in the fourth degree, possession of stolen property in the third degree, and driving

AFFIDAVIT OF TFO P. ZOLLER - 11

1 | people on the Tulalip Reservation. CS-4 told me that Lauw-ya S.S.A. Spencer ("L.
2 | SPENCER") sold counterfeit oxycodone pills out of the 81st Street Housing District. I
3 | know L. SPENCER to be S. SPENCER's sister who also lives at the SPENCER HOUSE.
4 | CS-4 agreed to conduct controlled buys for TPD, including a controlled buy off of L.
5 | SPENCER.

6          a.      Detective Cabras and I searched CS-4 and found no drugs, money,
7 | or contraband. Detective Cabras also searched the undercover vehicle we were using for
8 | the operation and found no drugs, money, or contraband. I gave CS-4 $40.00 cash to
9 | purchase narcotics. Detective Cabras and I drove CS-4 to the residence of an individual
10 | who CS-4 had identified as a source of counterfeit oxycodone pills on the Tulalip
11 | Reservation, James Foster, also known as "Badger." We attempted to conduct a
12 | controlled buy at FOSTER's house, but FOSTER was not there.

13          b.      Detective Cabras and I then drove CS-4 to the SPENCER HOUSE to
14 | purchase drugs from L. SPENCER. CS-4 entered the SPENCER HOUSE through the
15 | front door. While waiting for CS-4 to exit the house I saw S. SPENCER and L.
16 | SPENCER outside the house. I also saw a male who I recognized from previous
17 | narcotics investigations, Derek F. JONES, standing next to a gray BMW. While CS-4
18 | was still in the SPENCER HOUSE, a silver Cadillac Escalade EXT pickup truck arrived
19 | and parked outside the SPENCER HOUSE. FOSTER, and an unknown male ("FNU
20 | LNU") exited the Escalade and both men entered the SPENCER HOUSE. About 15-20
21 | minutes later, JONES, FOSTER, and FNU LNU. ARTZ exited as well, wearing a white
22 | t-shirt, plaid shorts, and a dark colored shoulder bag. All four men left the 81st Housing
23 | District in the Escalade and the BMW.

24          c.      CS-4 immediately returned to our vehicle after the buy and CS-4
25 | handed me two blue pills imprinted with "M30." Detective Cabras and I searched CS-4
26 |
27 | _____
28 | under the influence. CS-4 has previously provided credible information that has been corroborated by law
     enforcement.

AFFIDAVIT OF TFO P. ZOLLER - 12

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1 and found no drugs, money, or contraband.  I found a torn-off piece of notebook paper

2 that read "3609136931 Bobby."

3     d.  CS-4 told me that when he arrived at the SPENCER HOUSE he

4 spoke with L. SPENCER, who told CS-4 to proceed into the house, down the hallway, to

5 the last bedroom on the right, and that her friend would "serve them up."  CS-4 followed

6 L. SPENCER's instructions and found a baldheaded white male wearing a white t-shirt,

7 jean shorts, and wearing a shoulder bag across his body.  Based on this description, which

8 was similar to what I saw ARTZ wearing when ARTZ exited the SPENCER HOUSE, I

9 believe the individual who CS-4 met in the back bedroom was ARTZ.

10     e.  CS-4 explained that ARTZ interrogated CS-4, believing CS-4 to be

11 an informant.  JONES and S. SPENCER were also with ARTZ and CS-4 in the bedroom.

12 ARTZ instructed CS-4 to smoke a pill to prove that CS-4 was not an informant.  CS-4

13 feared for his/her safety so agreed to smoke the pill, after which CS-4, ARTZ, and

14 JONES left the house.  While in the back bedroom, CS-4 said that ARTZ had written his

15 name and number on a piece of paper and handed it to CS-4.

16     f.  I am providing the pills to the FBI for laboratory testing.

17    *Cellphone Used by ARTZ and S. SPENCER Contains Evidence of Drug Trafficking*

18   24.  In July 2021, an individual contacted TPD to provide information about

19 drug trafficking on the Tulalip Reservation ("Witness-3").  Witness-3 had found a

20 cellphone in Witness-3's car after the car had been borrowed.  Witness-3 opened the

21 phone, which was unlocked, found evidence of drug trafficking, and turned the phone

22 over to TPD.  Based on Witness-3's review of the phone, Witness-3 believed that the

23 phone belonged to ARTZ.  I then obtained a search warrant from Snohomish County

24 Superior Court to seize the phone and search it for evidence of drug trafficking.  During

25 the resulting search, I found the following:

26     a.  Indica of the phone belonging to ARTZ:

27       i.  Multiple photographs of ARTZ and S. SPENCER.

28 AFFIDAVIT OF TFO P. ZOLLER - 13

1        ii.        Photographs of ARTZ's daughter, which I recognized from

2   the photograph found in ARTZ's Gucci back after he fled from MYERS's car on May 11,

3   2021.

4        iii.       A photograph of ARTZ holding a pistol.

5        iv.        Email addresses that appear to belong to ARTZ:

6   badbob2385@gmail.com, bobartz2385@gmail.com.  I recognized "2385" as being

7   consistent with the day and year of ARTZ's birthday.

8        b.        Videos of S. SPENCER smoking a crystal-like substance.

9        c.        Communications regarding drug trafficking, including

10  communications about ARTZ selling drugs to people and ARTZ purchasing drugs from a

11  supplier, many of which used coded language.  Among these text messages was a

12  conversation on May 12, 2021, the day after TPD recovered a Gucci bag with narcotics

13  from MYERS's car outside the SPENCER HOUSE.  During the conversation, ARTZ

14  sent the following text messages:

15        *I was riding with the homie just getting to the 81st projects. And an under*

16        *cover task force hit his lights on us*

17        *I jumped out and ran.... I got away but they took my home to jail and*

18        *impounded his car*

19        *Along with my Gucci backpack and all my work*

20  25.    I noticed that the conversations that took place after June 30th, 2021,

21  appeared to be made by S. SPENCER.  S. SPENCER identified herself in several

22  messages and told recipients that she was using ARTZ's phone.  S. SPENCER's use of

23  ARTZ's phone begins when ARTZ was arrested and booked into the Snohomish County

24  Jail.

25                    **BACKGROUND ON DRUG TRAFFICKING**

26  26.    Based on my training and experience, and my discussions with other

27  experienced officers and agents involved in drug investigations, I know the following:

28  AFFIDAVIT OF TFO P. ZOLLER - 14

1        a.    Traffickers of controlled substances, and those who assist them,

2 maintain and tend to retain accounts or records of their drug trafficking activities,

3 including lists of drug quantities and money owed, telephone records including contact

4 names and numbers, photographs, and similar records of evidentiary value. These items

5 are generally kept in locations where drug traffickers believe their property is secure and

6 will remain undetected from law enforcement, such as inside their homes, vehicles and

7 storage lockers.

8        b.    Traffickers of controlled substances commonly maintain records

9 regarding addresses, vehicles, and/or telephone numbers of their suppliers, customers and

10 associates in the trafficking organization and it is common to find drug traffickers

11 keeping records of said associates in cellular telephones and other electronic devices.

12 Traffickers almost always maintain cellular telephones for ready access to their clientele

13 and to maintain their ongoing narcotics business.

14        c.    Illegal drug trafficking is a continuing activity over months and even

15 years. Illegal drug traffickers will repeatedly obtain and distribute controlled substances

16 on a somewhat regular basis, much as any distributor of a legitimate commodity would

17 purchase stock for sale, and, similarly, drug traffickers will have an "inventory," which

18 fluctuates in size depending upon various factors, including the demand and supply for

19 the product. I would expect the trafficker to keep records of his illegal activities for a

20 period of time extending beyond the time during which he actually possesses illegal

21 controlled substances, in order that he can maintain contact with his criminal associates

22 for future drug transactions, and so that he can have records of prior transactions for

23 which, for example, he might still be owed money, or might owe someone else money.

24 These records are often created in code.

25        d.    During the execution of search warrants, it is common to find

26 papers, letters, billings, documents, and other writings which show ownership, dominion,

27 and control of vehicles, residences, and/or storage units.

28

AFFIDAVIT OF TFO P. ZOLLER - 15

1    e.    Traffickers maintain evidence of their criminal activity at locations
2    that are convenient to them, including their residences, vehicles, and storage lockers. This
3    evidence often includes more than contraband and paraphernalia and includes financial
4    records, records of property and vehicle ownership, records of property rented, records of
5    post office boxes used to ship and receive contraband and currency, records of other
6    storage facilities used to hide drugs or currency, and other documentary evidence relating
7    to commission of, and proceeds from, their crimes.

8    f.    Traffickers frequently maintain items necessary for weighing,
9    packaging and cutting drugs for distribution.  This paraphernalia often includes scales,
10   plastic bags and other packaging materials, sifters, containers, and cutting/diluting agents
11   and items to mask the odor of narcotics.  Persons trafficking and using controlled
12   substances frequently sell more than one type of controlled substance at any one time.

13   g.    Persons trafficking and using controlled substances commonly sell
14   or use more than one type of controlled substance at any one time.

15   h.    It is common for drug dealers to also be users of their product, and it
16   is common for drug users to maintain paraphernalia associated with the use of controlled
17   substances, such as syringes, pipes, spoons, containers, straws, and razor blades.

18   i.    Traffickers often maintain weapons, including guns and ammunition,
19   in secure locations such as their residences and storage lockers, in order to protect their
20   drugs and drug proceeds.

21   j.    Drug trafficking is a cash business, and in order to escape notice
22   from authorities for using unexplained income, or hide excessive cash from illegal
23   activities, traffickers either keep large quantities of cash at home or other secure locations
24   such as a vehicles and storage locker, or convert the cash into other valuable assets, such
25   as jewelry, precious metals, monetary instruments, or other negotiable forms of wealth.
26   Records of such conversions are often stored where a trafficker lives.

27

28   AFFIDAVIT OF TFO P. ZOLLER - 16

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1         k.     A common method that drug traffickers use to distribute drugs is

2  through the use of passenger vehicles.  Similarly, the proceeds of the sales of drugs are

3  sometimes transported back in the same manner.  Vehicles used by drug traffickers are

4  often placed in fictitious or nominee names, and outfitted with concealed compartments

5  where the drugs and drug proceeds can be hidden to lessen the likelihood of interdiction.

6         l.     Traffickers often have false identification documents and

7  identification documents in the names of others.  Traffickers very often place assets in

8  names other than their own, or use fictitious names and identification, to avoid detection

9  of these assets by government agencies, while continuing to use these assets and exercise

10  dominion and control over them.

11         m.     Persons involved in drug trafficking conceal in their residences

12  caches of drugs, large amounts of currency, financial instructions, precious metals,

13  jewelry, and other items of value and/or proceeds of drug transactions as well as evidence

14  of financial transactions relating to obtaining, transferring, secreting, or the spending of

15  large sums of money made from engaging in narcotics trafficking activities.

16        27.    Based on my training and experience, and that of other investigators I have

17  talked to, I also know that drug dealers use cellular telephones as a tool or instrumentality

18  in committing their criminal activity.  They use them to maintain contact with their

19  suppliers, distributors, and customers.  They prefer cellular telephones because, first, they

20  can be purchased without the location and personal information that land lines require.

21  Second, they can be easily carried to permit the user maximum flexibility in meeting

22  associates, avoiding police surveillance, and traveling to obtain or distribute drugs.

23  Third, they can be passed between members of a drug conspiracy to allow substitution

24  when one member leaves the area temporarily.  Since cellular phone use became

25  widespread, every drug dealer I have contacted has used one or more cellular telephones

26  for his or her drug business.  I also know that it is common for drug traffickers to retain in

27  their possession phones that they previously used, but have discontinued actively using,

28

AFFIDAVIT OF TFO P. ZOLLER - 17

1   for their drug trafficking business.  These items may be kept for months and months in a
2   safe place controlled by the drug trafficker.  Based on my training and experience, the
3   data maintained in a cellular telephone used by a drug dealer is evidence of a crime or
4   crimes.  This includes the following:

5           a.      The assigned number to the cellular telephone (known as the mobile
6   directory number or MDN), and the identifying telephone serial number (Electronic Serial
7   Number, or ESN), (Mobile Identification Number, or MIN), (International Mobile
8   Subscriber Identity, or IMSI), or (International Mobile Equipment Identity, or IMEI) are
9   important evidence because they reveal the service provider, allow us to obtain subscriber
10  information, and uniquely identify the telephone.  This information can be used to obtain
11  toll records, to identify contacts by this telephone with other cellular telephones used by
12  co-conspirators, to identify other telephones used by the same subscriber or purchased as
13  part of a package, and to confirm if the telephone was contacted by a cooperating source.

14          b.      The stored list of recent received, missed, and sent calls is important
15  evidence.  It identifies telephones recently in contact with the telephone user.  This is
16  valuable information in a drug investigation because it will identify telephones used by
17  other members of the organization, such as suppliers, distributors and customers, and it
18  confirms the date and time of contacts.  If the user is under surveillance, it identifies what
19  number he called during or around the time of a drug transaction or surveilled meeting.
20  Even if a contact involves a telephone user not part of the conspiracy, the information is
21  helpful (and thus is evidence) because it leads to friends and associates of the user who
22  can identify the user, help locate the user, and provide information about the user.
23  Identifying a defendant's law-abiding friends is often just as useful as identifying his
24  drug-trafficking associates.

25          c.      Stored text messages are important evidence, similar to stored
26  numbers.  Agents can identify both drug associates, and friends of the user who likely
27  have helpful information about the user, his location, and his activities.

28  AFFIDAVIT OF TFO P. ZOLLER - 18

1             d.     Drug traffickers increasingly use applications on smart phones that

2 encrypt communications such as WhatsApp, or applications that automatically delete

3 messages, such as Snapchat, in order to avoid law enforcement monitoring or recording of

4 communications regarding drug trafficking and/or money laundering. Evidence of the use

5 of such applications can be obtained from smart phones, and is evidence of a smart phone

6 user's efforts to avoid law enforcement detection.

7             e.     Photographs on a cellular telephone are evidence because they help

8 identify the user, either through his or her own picture, or through pictures of friends,

9 family, and associates that can identify the user. Pictures also identify associates likely to

10 be members of the drug trafficking organization. Some drug dealers photograph groups of

11 associates, sometimes posing with weapons and showing identifiable gang signs. Also,

12 digital photos often have embedded "geocode" or GPS information embedded in them.

13 Geocode information is typically the longitude and latitude where the photo was taken.

14 Showing where the photo was taken can have evidentiary value. This location

15 information is helpful because, for example, it can show where coconspirators meet,

16 where they travel, and where assets might be located.

17             f.     Stored address records are important evidence because they show the

18 user's close associates and family members, and they contain names and nicknames

19 connected to phone numbers that can be used to identify suspects.

20                 **CELLULAR PHONES AND FORENSIC ANALYSIS**

21      28.     As described above and in Attachment B, this application seeks permission

22 to search for evidence, fruits and instrumentalities that might be found at the SPENCER

23 HOUSE, in whatever form they are found. One form in which the evidence, fruits, and

24 instrumentalities might be found is data stored cellular phones. Thus, the warrant applied

25 for would authorize the seizure of cellular phones or, potentially, the copying of

26 electronically stored information from cellular phones, all under Rule 41(e)(2)(B).

27 ///

28 AFFIDAVIT OF TFO P. ZOLLER - 19

29.    In order to examine digital media, including cellular phones, in a forensically sound manner, law enforcement personnel with appropriate expertise will conduct a forensic review of any digital media seized.  The purpose of using specially trained computer forensic examiners to conduct the imaging of any digital media or digital devices is to ensure the integrity of the evidence and to follow proper, forensically sound, scientific procedures.  Computer forensic examiners are needed because they generally have technological expertise that investigative agents do not possess.  Computer forensic examiners, however, may lack the factual and investigative expertise that an investigate agent may possess.  Therefore, computer forensic examiners and agents often work closely together.  I intend to seek the assistance of a forensic examiner with the FBI or within other law enforcement agencies to assist in the forensic review of any cellular phones found at the SPENCER HOUSE.

30.    I believe cellular phones are being used to communicate about drug distribution, including meeting times/locations for drug sales and the prices of drug quantities, therefore, there is probable cause to believe that evidence, fruits and instrumentalities of the crimes of Distribution of Controlled Substances and Possession with Intent to Distribute Controlled Substances, in violation of 21 U.S.C. § 841(a)(1), and Conspiracy to Distribute Controlled Substances, in violation of 21 U.S.C. § 846, exists and will be found on cellular phones at the SPENCER HOUSE, for at least the following reasons:

a.    Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be preserved (and consequently also then recovered) for months or even years after they have been downloaded onto a storage medium, deleted, or accessed or viewed via the Internet.  Electronic files downloaded to a cellular phone can be stored for years at little or no cost.  Even when files have been deleted, they can be recovered months or years later using forensic tools.  This is so because when a person "deletes" a file on a digital device, including on a cellular phone,

AFFIDAVIT OF TFO P. ZOLLER - 20

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101
(206) 553-7970

1    the data contained in the file does not actually disappear; rather, that data remains on the
2    storage medium until it is overwritten by new data.

3           b.      Therefore, deleted files, or remnants of deleted files, may reside in
4    free space or slack space—that is, in space on the cellular phone that is not currently
5    being used by an active file—for long periods of time before they are overwritten.  In
6    addition, a cellular phone's operating system may also keep a record of deleted data in a
7    "swap" or "recovery" file.

8           c.      Similarly, files that have been viewed via the Internet are sometimes
9    automatically downloaded into a temporary Internet directory or "cache."

10          31.     As further described in Attachment B, this application seeks permission to
11   locate not only cellular phones that might serve as direct evidence of the crimes described
12   on the warrant, but also for forensic electronic evidence that establishes how cellular
13   phones were used, who used them, and when. There is probable cause to believe that this
14   forensic electronic evidence will be on any cellular phone located at the SPENCER
15   HOUSE because:

16          a.      Stored data can provide evidence of a file that was once on the
17   cellular phone but has since been deleted or edited, or of a deleted portion of a file (such
18   as a paragraph that has been deleted from a word processing file).  Virtual memory
19   paging systems can leave traces of information on the cellular phone that show what tasks
20   and processes were recently active.  Web browsers, e-mail programs, and chat programs
21   store configuration information that can reveal information such as online nicknames and
22   passwords.  Operating systems can record additional information, such as the history of
23   connections to other digital devices, the attachment of peripherals, the attachment of USB
24   flash storage devices or other external storage media, and the times the cellular phone
25   was in use.  Computer file systems can record information about the dates files were
26   created and the sequence in which they were created.

27

28   AFFIDAVIT OF TFO P. ZOLLER - 21

1          b.     As explained herein, information stored within a cellular phone may

2 provide crucial evidence of the "who, what, why, when, where, and how" of the criminal

3 conduct under investigation, thus enabling the United States to establish and prove each

4 element or alternatively, to exclude the innocent from further suspicion.  In my training

5 and experience, information stored within a cellular phone (e.g., registry information,

6 communications, images and movies, transactional information, records of session times

7 and durations, internet history, and anti-virus, spyware, and malware detection programs)

8 can indicate who has used or controlled the cellular phone.  This "user attribution"

9 evidence is analogous to the search for "indicia of occupancy" while executing a search

10 warrant at a residence.  Further, cellular phone activity can indicate how and when the

11 cellular phone was accessed or used.  For example, as described herein, cellular phones

12 typically contain information that log the IP addresses through which the cellular phone

13 accessed networks and the internet.  Such information allows investigators to understand

14 the chronological context of cellular phone access, use, and events relating to the crime

15 under investigation.[6]   Additionally, some information stored within a cellular phone may

16 provide crucial evidence relating to the physical location of other evidence and the

17 suspect.  For example, images stored on a cellular phone may both show a particular

18 location and have geolocation information incorporated into its file data.  Such file data

19 typically also contains information indicating when the file or image was created.  The

20 geographic and timeline information described herein may either inculpate or exculpate

21 the cellular phone user.  Last, information stored within a cellular phone may provide

22 relevant insight into the user's state of mind as it relates to the offense under

23 investigation.  For example, information within the cellular phone may indicate the

24

25 _____

26 [6] For example, if the examination of a cellular phone shows that:  a) at 11:00am, someone using the phone used an
internet browser to log into a bank account in the name of John Doe; b) at 11:02am the internet browser was used to

27 download child pornography; and c) at 11:05 am the internet browser was used to log into a social media account in
the name of John Doe, an investigator may reasonably draw an inference that John Doe downloaded child

28 pornography.
AFFIDAVIT OF TFO P. ZOLLER - 22

1   owner's motive and intent to commit a crime (e.g., internet searches indicating criminal
2   planning), or consciousness of guilt (e.g., running a "wiping" program to destroy
3   evidence on the cellular phone or password protecting/encrypting such evidence in an
4   effort to conceal it from law enforcement).

5           c.      A person with appropriate familiarity with how a digital device,
6   including a cellular phone, works can, after examining this forensic evidence in its proper
7   context, draw conclusions about how the cellular phones were used, the purpose of their
8   use, who used them, and when.

9           d.      The process of identifying the exact files, blocks, registry entries,
10  logs, or other forms of forensic evidence on a cellular phone that are necessary to draw an
11  accurate conclusion is a dynamic process.  While it is possible to specify in advance the
12  records to be sought, digital evidence is not always data that can be merely reviewed by a
13  review team and passed along to investigators.  Whether data stored on a cellular phone is
14  evidence may depend on other information stored on the cellular phone and the
15  application of knowledge about how a computer, including a "smart" cellular phone,
16  behaves.  Therefore, contextual information necessary to understand other evidence also
17  falls within the scope of the warrant.

18          e.      Further, in finding evidence of how a cellular phone was used, the
19  purpose of its use, who used it, and when, sometimes it is necessary to establish that a
20  particular thing is not present.  For example, the presence or absence of counter-forensic
21  programs or anti-virus programs (and associated data) may be relevant to establishing the
22  user's intent.

23  32.    As explained in paragraphs 13b, 23c, and 24-25 above, residents of the
24  SPENCER HOUSE, including ARTZ, S. SPENCER, CHEER, and MACKENZIE,
25  routinely used cell phones to arrange for drug sales.

26  33.    Because of the nature of the evidence that I am attempting to obtain and the
27  nature of the investigation, I have not made any prior efforts to obtain the evidence based

28  AFFIDAVIT OF TFO P. ZOLLER - 23

1    on the consent of any party who may have authority to consent. I believe, based upon the

2    nature of the investigation and the information I have received, that if ARTZ, S.

3    SPENCER, L. SPENCER, and/or other residents of the SPENCER HOUSE and targets

4    known and unknown become aware of the investigation in advance of the execution of a

5    search warrant, they may attempt to destroy any potential evidence, whether digital or

6    non-digital, thereby hindering law enforcement agents from the furtherance of the

7    criminal investigation.

8       34.    In most cases, a thorough search of premises for information that might be

9    stored on a cellular phone often requires the seizure of the physical items and later off-

10   site review consistent with the warrant. In lieu of removing all of these items from the

11   premises, it is sometimes possible to make an image copy of the data on the cellular

12   phone, onsite. Generally speaking, imaging is the taking of a complete electronic picture

13   of the device's data, including all hidden sectors and deleted files. Either seizure or

14   imaging is often necessary to ensure the accuracy and completeness of data recorded on

15   the item, and to prevent the loss of the data either from accidental or intentional

16   destruction. As noted above, not all evidence takes the form of documents and files that

17   can be easily viewed on site. Analyzing evidence of how a cellular phone has been used,

18   what it has been used for, and who has used it requires considerable time, and taking that

19   much time on premises could be unreasonable. As explained above, because the warrant

20   calls for forensic electronic evidence, it is exceedingly likely that it will be necessary to

21   thoroughly examine the respective digital device and/or electronic storage media to

22   obtain evidence. Cellular phones can store a large volume of information. Reviewing

23   that information for things described in the warrant can take weeks or months, depending

24   on the volume of data stored, and would be impractical and invasive to attempt on-site.

25                        *Search Techniques*

26       35.    Based on the foregoing, and consistent with Rule 41(e)(2)(B) of the Federal

27   Rules of Criminal Procedure, the warrant I am applying for will permit seizing, imaging,

28   AFFIDAVIT OF TFO P. ZOLLER - 24

1    or otherwise copying cellular phones that reasonably appear capable of containing some

2    or all of the data or items that fall within the scope of Attachment B to this Affidavit, and

3    will specifically authorize a later review of the media or information consistent with the

4    warrant.

5         36.    A search of digital devices for evidence described in Attachment B may

6    require a range of data analysis techniques.  In some cases, agents may recover evidence

7    with carefully targeted searches to locate evidence without requirement of a manual

8    search through unrelated materials that may be commingled with criminal evidence.

9    Agents may be able to execute a "keyword" search that searches through the files stored

10   in a digital device for special terms that appear only in the materials covered by the

11   warrant.  Or, agents may be able to locate the materials covered by looking for a

12   particular directory or name.  However, in other cases, such techniques may not yield the

13   evidence described in the warrant.  Individuals may mislabel or hide files and directories;

14   encode communications to avoid using keywords; attempt to delete files to evade

15   detection; or take other steps designed to hide information from law enforcement

16   searches for information.

17        37.    Because several people share the SPENCER HOUSE as a residence, it is

18   possible that the SPENCER HOUSE will contain cellular phones that are predominantly

19   used, and perhaps owned, by persons who are not suspected of a crime.  If agents

20   conducting the search nonetheless determine that it is possible that the things described in

21   this warrant could be found on those cellular phones, this application seeks permission to

22   search and if necessary to seize those cellular phones as well.  It may be impossible to

23   determine, on scene, which cellular phones contain the things described in this warrant.

24                        **REQUEST FOR SERVICE AT 5:00AM**

25        38.    The government also requests permission to serve the warrant at 5:00am,

26   for the following reasons:

27

28   AFFIDAVIT OF TFO P. ZOLLER - 25

1     a.      During the course of this investigation, investigators have discovered
2    numerous individuals associated with the target address that may be armed. As noted in
3    paragraph 24a above, ARTZ was photographed holding a handgun. Additionally, during
4    the course of this investigation, individuals associated with the SPENCER HOUSE are
5    suspected to be involved in shooting incidents. One such individual was arrested in early
6    2021 with a weapon on her person. Another individual associated with the target location
7    is the suspect in a drive-by shooting that occurred in Everett, WA earlier this year.

8     b.      I As such, I further request that the court authorize investigators to
9    serve this warrant at 5:00am. I know that sunrise this time of year occurs around 6:30am,
10   and that daylight begins before that. The SPENCER HOUSE is in close proximity to a
11   park, where the presence of foot traffic will likely increase with daylight hours.

12    c.      By executing the search warrant at 5:00am, agents will have the
13   ability to arrive at the venue in darkness, that will provide a safe approach and increase
14   the government's ability to subsequently ensure the safety of all parties involved: the
15   public, law enforcement officers, the subjects of the investigation, and other co-
16   conspirators or associates who may be at the target location. By arriving at the venue
17   under cover of darkness, agents will lessen the likelihood of being seen by any person in
18   the house. This, in turn, lessens the likelihood of an individual shooting at agents over
19   distance, rather than in close proximity. If shots are fired over distance, it could
20   significantly increase the danger to other residents and bystanders in the neighborhood.

21                                    **CONCLUSION**

22   39.     Based on the foregoing, I believe there is probable cause that evidence,
23   fruits, and instrumentalities of the crimes of Distribution of Controlled Substances and
24   Possession with Intent to Distribute Controlled Substances, in violation of 21 U.S.C.
25   § 841(a)(1), and Conspiracy to Distribute Controlled Substances, in violation of 21
26   U.S.C. § 846, are located at the SPENCER HOUSE, as more fully described in
27   Attachment A to this Affidavit, as well as on and in any cellular phones found at the

28   AFFIDAVIT OF TFO P. ZOLLER - 26

1  SPENCER HOUSE.  I therefore request that the court issue a warrant authorizing a

2  search of the SPENCER HOUSE, as well as any cellular phones located therein, for the

3  items more fully described in Attachment B hereto, incorporated herein by reference, and

4  the seizure of any such items found therein.

5

6

7                                          P. Zoller, Affiant

8                                          Task Force Officer, FBI

9

10  SUBSCRIBED AND SWORN before me this _____ day of MONTH, YEAR

11                              1st Day of September

12

13

14                    THE HONORABLE XXXXXXXX S. Kate Vaughan

15                    United States Magistrate Judge

16

17

18

19

20

21

22

23

24

25

26

27

28

AFFIDAVIT OF TFO P. ZOLLER - 27

## ATTACHMENT A

### Property to Be Searched



This warrant applies to information, evidence, instrumentalities, and fruits of violations associated with Robert K. ARTZ and Shaneenia M. SPENCER and others known and unknown that are located on the PREMISES resided at by ARTZ, S. SPENCER, and L. SPENCER at 8021 30th Drive Northeast in Tulalip, Washington. (PREMISES).

The PREMISES is a one-story house that is green with white trim. The front of the property has a driveway that extends to 30th Drive Northeast.

The PREMISES has two exterior doors: one to the front and one to the rear of the property. The interior is a 5-bedroom, 3-bathroom, wood structure with an attached garage. The main entry is facing west with the back door facing east.

Authority to search extends to all parts of the property, including main structure, garage(s), storage structures, outbuildings, and curtilage, and all vehicles, containers,

ATTACHMENT A - 1

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    compartments, or safes located on the property, whether locked or not, where the items

2    described in Attachment B could be found.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ATTACHMENT A - 2

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**ATTACHMENT B**

**ITEMS TO BE SEIZED**

All documents, records, images, and items, in whatever form, that are evidence, contraband, fruits, and instrumentalities of the commission of the following crimes: 21 U.S.C. § 841(a)(1) (distribution of controlled substances / possession with intent to distribute controlled substances); 21 U.S.C. § 846 (conspiracy to distribute controlled substances) involving Robert K. ARTZ, Shaneenia M. SPENCER, Lauw-ya S.S.A. SPENCER, and others known and unknown, since May 2020, including

1. Controlled Substances and controlled substance analogues.

2. Drug Paraphernalia and Instruments of Drug Trafficking: Items used, or to be used, to store, process, package, use, and/or distribute controlled substances; plastic bags, cutting agents, scales, measuring equipment, tape, hockey or duffel bags, chemicals or items used to test the purity and/or quality of controlled substances.

3. Drug Transaction Records: Documents such as ledgers, receipts, and notes relating to the acquisition, transportation, and distribution of controlled substances, however stored, including in cellular phones.

4. Customer and Supplier Information: Items identifying drug customers and drug suppliers, such as telephone records, personal address books, correspondence, diaries, calendars, notes with phone numbers and names, "pay/owe sheets" with drug amounts and prices, and maps or directions.

5. Cash and Financial Records: Currency and financial records, such as bank records, safe deposit box records and keys, credit card records, bills, receipts, tax returns, and vehicle documents; records that show income and expenditures, net worth, money transfers, wire transmittals, negotiable instruments, bank drafts, and cashier's checks.

6. Photographs/Video: Photographs, video tapes, digital cameras, surveillance cameras, and associated hardware/storage devices depicting property occupants, friends and relatives of the property occupants, or suspected buyers or sellers of controlled substances, controlled substances or other contraband, weapons, and assets derived from the distribution of controlled substances.

7. Weapons, including firearms, magazines, ammunition, and body armor.

ATTACHMENT B - 1

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

8.      Codes:  Evidence of codes used in the distribution of controlled substances, such as passwords, code books, cypher or decryption keys.

9.      Property Records:  Deeds, contracts, escrow documents, mortgage documents, rental documents, and other evidence relating to the purchase, ownership, rental, income, expenses, or control of the Target Residence, and similar records of other property owned or rented.

10.     Indicia of occupancy, residency, and/or ownership of assets such as utility and telephone bills, canceled envelopes, rental records or payment receipts, leases, and mortgage statements.

11.     Evidence of storage unit rental or access such as rental and payment records, keys and codes, pamphlets, contracts, contact information, directions, and passwords.

12.     Evidence of Personal Property Ownership:  Registration information, ownership documents, or other evidence of ownership of personal property such as vehicles, vessels, boats, airplanes, jet skis, all-terrain vehicles, RVs, and jewelry; evidence of international or domestic travel, hotel stays, and other evidence of unexplained wealth.

13.     Individual and business financial books, records, receipts, notes, ledgers, diaries, journals, and all records relating to income, profit, expenditures, or losses, such as:

a.      Employment records:  paychecks or stubs, lists and accounts of employee payrolls, records of employment tax withholdings and contributions, dividends, stock certificates, and compensation to officers.

b.      Savings accounts:  statements, ledger cards, deposit tickets, register records, wire transfer records, correspondence, and withdrawal slips.

c.      Checking accounts:  statements, canceled checks, deposit tickets, credit/debit documents, wire transfer documents, correspondence, and register records.

d.      Loan Accounts:  financial statements and loan applications for all loans applied for, notes, loan repayment records, and mortgage loan records.

e.      Collection account statements and other-related records.

f.      Certificates of deposit:  applications, purchase documents, and statements of accounts.

g.      Credit card accounts:  credit cards, monthly statements, and receipts of use.

h.      Receipts and records related to gambling wins and losses, or any other contest winnings.

ATTACHMENT B - 2

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    j.    Financial records: profit and loss statements, financial statements,
2  receipts, balance sheets, accounting work papers, any receipts showing purchases made,
   both business and personal, receipts showing charitable contributions, and income and
3  expense ledgers.

4
     14.   All bearer bonds, letters of credit, money drafts, money orders, cashier's
5  checks, travelers checks, Treasury checks, bank checks, passbooks, bank drafts, money
6  wrappers, stored value cards, and other forms of financial remuneration evidencing the
   obtaining, secreting, transfer, and/or concealment of assets and/or expenditures of money.
7
8     15.   All Western Union and/or Money Gram documents and other financial
   documents evidencing domestic or international wire transfers, money orders, official
9  checks, cashier's checks, or other negotiable interests that can be purchased with cash,
   including applications, payment records, money orders, and frequent customer cards.
10

11    16.   Correspondence, papers, records, and any other items showing employment
12  or lack of employment.

13    17.   Phone books, address books, any papers or documents reflecting names,
14  addresses, telephone numbers, pager numbers, cellular telephone numbers, facsimile,
   and/or telex numbers, telephone records and bills relating to co-conspirators, sources of
15  supply, customers, financial institutions, and other individuals or businesses with whom a
   financial relationship exists; telephone answering devices that record telephone
16  conversations and the tapes therein for messages left for or by co-conspirators for the
17  delivery or purchase of controlled substances or laundering of drug proceeds.

18
     18.   Safes and locked storage containers, and the contents thereof which are
19  otherwise described in this document.

20
     19.   Tools that may be used to open hidden compartments in vehicles, such as
21  paint, bonding agents, magnets, or other items that may be used to open/close said
22  compartments.

23    20.   Pill press machine, encapsulating machine, and other tools or equipment
24  used to manufacture pills.

25    21.   Cellular phones, including:

26    a.    Any passwords, password files, test keys, encryption codes or other
27  information necessary to access the cellular phone;

28

ATTACHMENT B - 3

1
2          b.      Evidence of who used, owned, or controlled the cellular phone at the
time the things described in this warrant were created, edited, or deleted, such as logs,
registry entries, configuration files, saved usernames and passwords, documents,
3   browsing history, user profiles, email, email contacts, "chat," instant messaging logs,
4   photographs, and correspondence; and

5          c.      Evidence of the times the cellular phone was used.

6

7          **This warrant authorizes a review of electronic storage media and**
8   **electronically stored information seized or copied pursuant to this warrant in order**
9   **to locate evidence, fruits, and instrumentalities described in this warrant. The**
10  **review of this electronic data may be conducted by any government personnel**
11  **assisting in the investigation, who may include, in addition to law enforcement**
12  **officers and agents, attorneys for the government, attorney support staff, and**
13  **technical experts. Pursuant to this warrant, the Tulalip Police Department and the**
14  **Federal Bureau of Investigations may deliver a complete copy of the seized or**
15  **copied electronic data to the custody and control of attorneys for the government**
16  **and their support staff for their independent review.**

17
18
19
20
21
22
23
24
25
26
27
28

ATTACHMENT B - 4

CERTIFIED TRUE COPY
BRIAN SUBRAMANIAN
Clerk, U.S. District Court
Western District of Washington

AO 93 (Rev. 11/13) Search and Seizure Warrant

By _____
Deputy Clerk

# UNITED STATES DISTRICT COURT

for the

Western District of Washington

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) | Case No.    MJ21-489 |
| Subject Residence, as more fully described in Attachment A | ) ) ) | |

## SEARCH AND SEIZURE WARRANT

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____ Western _____ District of _____ Washington _____
*(identify the person or describe the property to be searched and give its location)*:

SEE ATTACHMENT A (INCORPORATED BY REFERENCE).

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

SEE ATTACHMENT B, ATTACHED HERETO AND INCORPORATED HEREIN BY REFERENCE.

**YOU ARE COMMANDED** to execute this warrant on or before _____ 09/15/2021 _____ *(not to exceed 14 days)*
❑ in the daytime 6:00 a.m. to 10:00 p.m.    ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____ Any Magistrate Judge in the WDWA _____
*(United States Magistrate Judge)*

❑ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*

❑ for _____ days *(not to exceed 30)*    ❑ until, the facts justifying, the later specific date of _____

Date and time issued:     09/01/2021 @ 4:55 pm _____

_____ State Vaughan _____
*Judge's signature*

City and state:     Seattle, Washington _____

S. Kate Vaughan, United States Magistrate Judge
*Printed name and title*

2021R00997

AO 93  (Rev. 11/13) Search and Seizure Warrant (Page 2)

| Return | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name of any person(s) seized:

| Certification |
|---|

      I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.


Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

1

## ATTACHMENT A

2

**Property to Be Searched**

3
4
5
6
7
8
9
10
11
12
13
14
15



16      This warrant applies to information, evidence, instrumentalities, and fruits of

17  violations associated with Robert K. ARTZ and Shaneenia M. SPENCER and others

18  known and unknown that are located on the PREMISES resided at by ARTZ, S.

19  SPENCER, and L. SPENCER at 8021 30th Drive Northeast in Tulalip, Washington.

20  (PREMISES).

21      The PREMISES is a one-story house that is green with white trim.  The front of

22  the property has a driveway that extends to 30th Drive Northeast.

23      The PREMISES has two exterior doors: one to the front and one to the rear of the

24  property. The interior is a 5-bedroom, 3-bathroom, wood structure with an attached

25  garage.  The main entry is facing west with the back door facing east.

26      Authority to search extends to all parts of the property, including main structure,

27  garage(s), storage structures, outbuildings, and curtilage, and all vehicles, containers,

28

ATTACHMENT A - 1

1  compartments, or safes located on the property, whether locked or not, where the items
2  described in Attachment B could be found.
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

ATTACHMENT A - 2

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1

2

**ATTACHMENT B**

**ITEMS TO BE SEIZED**

3

4

5

6

7

8

All documents, records, images, and items, in whatever form, that are evidence, contraband, fruits, and instrumentalities of the commission of the following crimes: 21 U.S.C. § 841(a)(1) (distribution of controlled substances / possession with intent to distribute controlled substances); 21 U.S.C. § 846 (conspiracy to distribute controlled substances) involving Robert K. ARTZ, Shaneenia M. SPENCER, Lauw-ya S.S.A. SPENCER, and others known and unknown, since May 2020, including

9

1.    Controlled Substances and controlled substance analogues.

10

11

12

13

2.    Drug Paraphernalia and Instruments of Drug Trafficking: Items used, or to be used, to store, process, package, use, and/or distribute controlled substances; plastic bags, cutting agents, scales, measuring equipment, tape, hockey or duffel bags, chemicals or items used to test the purity and/or quality of controlled substances.

14

15

3.    Drug Transaction Records:  Documents such as ledgers, receipts, and notes relating to the acquisition, transportation, and distribution of controlled substances, however stored, including in cellular phones.

16

17

18

19

4.    Customer and Supplier Information:  Items identifying drug customers and drug suppliers, such as telephone records, personal address books, correspondence, diaries, calendars, notes with phone numbers and names, "pay/owe sheets" with drug amounts and prices, and maps or directions.

20

21

22

5.    Cash and Financial Records:  Currency and financial records, such as bank records, safe deposit box records and keys, credit card records, bills, receipts, tax returns, and vehicle documents; records that show income and expenditures, net worth, money transfers, wire transmittals, negotiable instruments, bank drafts, and cashier's checks.

23

24

25

26

6.    Photographs/Video:  Photographs, video tapes, digital cameras, surveillance cameras, and associated hardware/storage devices depicting property occupants, friends and relatives of the property occupants, or suspected buyers or sellers of controlled substances, controlled substances or other contraband, weapons, and assets derived from the distribution of controlled substances.

27

28

7.    Weapons, including firearms, magazines, ammunition, and body armor.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1      8.     Codes:  Evidence of codes used in the distribution of controlled substances,
2  such as passwords, code books, cypher or decryption keys.

3      9.     Property Records:  Deeds, contracts, escrow documents, mortgage
4  documents, rental documents, and other evidence relating to the purchase, ownership,
5  rental, income, expenses, or control of the Target Residence, and similar records of other
  property owned or rented.

6      10.    Indicia of occupancy, residency, and/or ownership of assets such as utility
7  and telephone bills, canceled envelopes, rental records or payment receipts, leases, and
8  mortgage statements.

9      11.    Evidence of storage unit rental or access such as rental and payment
10  records, keys and codes, pamphlets, contracts, contact information, directions, and
11  passwords.

12      12.    Evidence of Personal Property Ownership:  Registration information,
13  ownership documents, or other evidence of ownership of personal property such as
14  vehicles, vessels, boats, airplanes, jet skis, all-terrain vehicles, RVs, and jewelry;
15  evidence of international or domestic travel, hotel stays, and other evidence of
  unexplained wealth.

16      13.    Individual and business financial books, records, receipts, notes, ledgers,
17  diaries, journals, and all records relating to income, profit, expenditures, or losses, such
  as:
18         a.     Employment records:  paychecks or stubs, lists and accounts of
19  employee payrolls, records of employment tax withholdings and contributions, dividends,
  stock certificates, and compensation to officers.
20         b.     Savings accounts:  statements, ledger cards, deposit tickets, register
  records, wire transfer records, correspondence, and withdrawal slips.
21         c.     Checking accounts:  statements, canceled checks, deposit tickets,
22  credit/debit documents, wire transfer documents, correspondence, and register records.
         d.     Loan Accounts:  financial statements and loan applications for all
23  loans applied for, notes, loan repayment records, and mortgage loan records.
24         e.     Collection account statements and other-related records.
         f.     Certificates of deposit:  applications, purchase documents, and
25  statements of accounts.
26         g.     Credit card accounts:  credit cards, monthly statements, and receipts
  of use.
27         h.     Receipts and records related to gambling wins and losses, or any
28  other contest winnings.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1          j.      Financial records:  profit and loss statements, financial statements, receipts, balance sheets, accounting work papers, any receipts showing purchases made, both business and personal, receipts showing charitable contributions, and income and expense ledgers.

14.    All bearer bonds, letters of credit, money drafts, money orders, cashier's checks, travelers checks, Treasury checks, bank checks, passbooks, bank drafts, money wrappers, stored value cards, and other forms of financial remuneration evidencing the obtaining, secreting, transfer, and/or concealment of assets and/or expenditures of money.

15.    All Western Union and/or Money Gram documents and other financial documents evidencing domestic or international wire transfers, money orders, official checks, cashier's checks, or other negotiable interests that can be purchased with cash, including applications, payment records, money orders, and frequent customer cards.

16.    Correspondence, papers, records, and any other items showing employment or lack of employment.

17.    Phone books, address books, any papers or documents reflecting names, addresses, telephone numbers, pager numbers, cellular telephone numbers, facsimile, and/or telex numbers, telephone records and bills relating to co-conspirators, sources of supply, customers, financial institutions, and other individuals or businesses with whom a financial relationship exists; telephone answering devices that record telephone conversations and the tapes therein for messages left for or by co-conspirators for the delivery or purchase of controlled substances or laundering of drug proceeds.

18.    Safes and locked storage containers, and the contents thereof which are otherwise described in this document.

19.    Tools that may be used to open hidden compartments in vehicles, such as paint, bonding agents, magnets, or other items that may be used to open/close said compartments.

20.    Pill press machine, encapsulating machine, and other tools or equipment used to manufacture pills.

21.    Cellular phones, including:

a.      Any passwords, password files, test keys, encryption codes or other information necessary to access the cellular phone;

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1        b.     Evidence of who used, owned, or controlled the cellular phone at the
2 time the things described in this warrant were created, edited, or deleted, such as logs,
registry entries, configuration files, saved usernames and passwords, documents,
3 browsing history, user profiles, email, email contacts, "chat," instant messaging logs,
4 photographs, and correspondence; and

5        c.     Evidence of the times the cellular phone was used.

6

7      **This warrant authorizes a review of electronic storage media and**
8 **electronically stored information seized or copied pursuant to this warrant in order**
9 **to locate evidence, fruits, and instrumentalities described in this warrant. The**
10 **review of this electronic data may be conducted by any government personnel**
11 **assisting in the investigation, who may include, in addition to law enforcement**
12 **officers and agents, attorneys for the government, attorney support staff, and**
13 **technical experts. Pursuant to this warrant, the Tulalip Police Department and the**
14 **Federal Bureau of Investigations may deliver a complete copy of the seized or**
15 **copied electronic data to the custody and control of attorneys for the government**
16 **and their support staff for their independent review.**

17

18

19

20

21

22

23

24

25

26

27

28

ATTACHMENT B - 4

# Exhibit 2

# ATTACHMENT "A"

## Canine and Handler Resume

City of Marysville Dual Purpose K9 "Steele" is a six-year-old male Belgian Malinois.  Steele and I completed over 400 training hours for controlled substance detection in March 2017.  Steele is trained in the detection of odors emanating from Cocaine, Heroin and Methamphetamine.

Dual Purpose K9 Steele is trained to give a passive alert to odors emanating from the above listed controlled substances. This alert is described as a change in behavior characterized by tail flagging, intensive sniffing, mouth closure and/or focusing on a specific area.  This "Alert" phase is prominent to where K9 Steele searches to the source of the odor and stares.

I have been a Police Officer with the City of Marysville since September 2009 and am currently assigned to the K-9 Unit.  I am currently handling my third canine.

From 2011 until 2016, I handled Controlled Substance Detection K9 Katy.  During that time, we were certified through the Pacific Northwest Police Detection Dog Association and the Washington State Criminal Justice Training Commission as a "Team".   From 2003 until 2009, I handled Dual Purpose K-9 Cyrus.  During that time, we were certified through the North American Police Work Dog Association, Washington State Criminal Justice Training Commission and the Pacific Northwest Police Detection Dog Association as a "Team".

I currently hold a Dual Purpose Dog Team Certification (Patrol/Controlled Substance Detection) through the Washington State Police Canine Association, Washington State Criminal Justice Training Commission and the Pacific Northwest Police Drug Detection Dog Association.  Additionally, I have attended training seminars put on by the North American Police Work Dog Association, Montana Police Canine Association, Pacific Northwest Police Drug Detection Dog Association and the St. Petersburg College Multijurisdictional Counterdrug Task Force.

I am currently an evaluator for narcotic detection canine teams through the Washington State Criminal Justice Training Commission and the Pacific Northwest Police Drug Detection Dog Association.  I am certified as a Master Handler Team in both Narcotic Detection and Generalist (Patrol) Canine through the Washington State Police Canine Association.  I am certified as a Trainer of Narcotic Detection Canine Teams through the Washington State Police Canine Association

Dual Purpose K9 Steele and I have performed over 500 applications where controlled substances were discovered and/or the odor of controlled substances were present.  Dual Purpose K9 Steele continues to show that he is reliable in training and applications.

*This document was submitted on a device that is owned, issued or maintained by the Marysville Police Department, which is an identified criminal justice agency in Washington State.*

*I certify under penalty of perjury under the laws of the State of Washington the foregoing is true and correct (RCW 9A.72.085) and I am entering my authorized user ID and password to authenticate it.*

*Officer Brad Smith Badge #0099*
*Marysville Police Department*
*City of Marysville, WA*                                    *Date 09-02-2021*